UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALCLIFF M. DALEY,
Plaintiff,
v.
J. JUNEAU, et al.,
Defendants.

Case No. 25-cv-05922-PCP

**ORDER OF SERVICE**

Alcliff Daley filed this *pro se* civil rights action under 42 U.S.C. § 1983 regarding events that occurred while he was incarcerated at Pelican Bay State Prison ("PBSP"). Dkt. No. 1. Mr. Daley's amended complaint now is before the Court for review. Dkt. No. 10 ("Am. Compl."). For the reasons stated below, the Court orders defendants to respond to the amended complaint.

## I. Background

At all relevant times, Mr. Daley was incarcerated at PBSP. *See generally* Am. Compl. He since has been moved to the California Substance Abuse Treatment Facility. *See id*. at 1.

On unspecified dates, Mr. Daley fractured his wrist and underwent carpal tunnel surgery. *See id*. at 3. He wears a permanent wrist brace and has a permanent "chrono" that he be restrained using waist chains rather than standard handcuffs. *See id*. at 3–4. A waist chain "wrap[s] around [the prisoner's] waist" and then "still attach[es] to the cuff on [the prisoner's] wrist." *Id*. at 9. This chrono pre-dates the events at issue in this action. *See generally id*.

In April 2024, Mr. Daley was housed in PBSP's mental health program. *Id*. at 3. In May 2024, the mental health team "reduce[d]" Mr. Daley's "level of care [] to CCCMS." *Id*.

On May 28, 2024, Mr. Daley appeared before a classification committee and was informed he would be moved into general population housing. *See id*. Mr. Daley stated that he requested to

United States District Court
Northern District of California

be placed in "SNY or non-designated program," because of a "problem with the Bloods Gang," but his request was denied. *See id*.

**A. June 13, 2024**

Mr. Daley's move to general population housing was scheduled for June 13, 2024. *See id*. at 4. On that date, defendant Hamilton ordered Mr. Daley to "cuff up" for the move, and grabbed Mr. Daley's right arm and twisted it behind his back. *See id*. at 4. Defendant Hamilton did so despite knowing that Mr. Daley had a waist-chain chrono. *See id*. Mr. Daley protested that defendant Hamilton was hurting him. *See id*. Upon comment from non-defendant correctional officer Grogan, defendant Hamilton released Mr. Daley. *See id*.

Defendant Curry arrived and told Mr. Daley, "you got three options, you go [to general population housing] willingly, or go by force, or say the magic word (suicidal)." *Id*. at 5. When Mr. Daley refused to go to general population, defendant Curry ordered defendants Hamilton and Clifton to handcuff Mr. Daley. *See id*. Prior to giving this order, defendant Curry "knew [Mr. Daley] had a permanent waist-chain chrono." *Id*. Defendants Hamilton and Clifton then "grabbed [Mr. Daley's] arms and twisted them behind his back." *Id*. Mr. Daley "scream[ed] in pain" and reminded the officers of his waist-chain chrono. *Id*. Non-defendant Grogan told the officers to remove the cuffs because Mr. Daley had a waist-chain chrono. *See id*. at 6. "While escorting [Mr. Daley] across the yard, the officers continued applying pressure to [Mr. Daley's] injured wrist." *Id*.

Mr. Daley "went man down" and requested medical assistance. Medical staff transported Mr. Daley to the medical clinic. After he was released from the clinic, Mr. Daley was taken to general population housing. *See id*. at 6.

Two hours after he entered general population housing, Mr. Daley was threatened by two other inmates. *See id*. The threat does not appear to have been acted upon. *See generally id*.

**B. June 20, 2024**

On June 20, 2024, Mr. Daley reported feeling suicidal. *See id.* at 6–7. He was placed in the crisis unit. Upon his release from the crisis unit, PBSP attempted to return him to general population housing. *See id*. at 7. Mr. Daley refused to be housed in general population, and so was



United States District Court
Northern District of California

instead moved to the restricted housing unit. *See id.*

**C. June 26, 2024**

On June 26, 2024, while still housed in the restrictive housing unit, Mr. Daley was again taken to a meeting with a committee. *See id.* at 7. He was escorted by defendants Gisler and Goodwin. *See id.*

Defendant Betsinger accused Mr. Daley of "trying to hide in EOP" despite Mr. Daley's life sentence, and instructed defendants Gisler and Goodwin to "get [Mr. Daley] out of here and teach[] him a lesson about Pelican Bay." *Id.* at 8. Mr. Daley alleges that defendant Betsinger "instruct[ed] the defendants [Gisler and Goodwin] to assault [Mr. Daley] … in retaliation because [Mr. Daley] refused to be housed" in general population. *See id.* at 11.

Defendants Gisler and Goodwin "yank[ed] [Mr. Daley] from the chair," "dragged him down the hallway," and threatened to slam his face into the ground. *Id.* at 8. As they reached Mr. Daley's cell, they were joined by defendants Gamez and Rodriquez. *See id.* Defendant Rodriquez "was carrying a triangle restraint device." *Id.* Defendant Gisler then instructed defendant Rodriquez to put the triangle on Mr. Daley's waist chain. *See id.* at 9. Because that chain is attached to handcuffs, the triangle then can be used to apply pressure to a prisoner's wrist. *See id.*

Mr. Daley entered his cell and put his arms through the food slot so that his handcuffs could be removed. *See id.* Defendant Gisler instructed defendant Rodriquez to pull on the triangle. *See id.* Mr. Daley was slammed against the cell door by the force of the pull, and that force was exerted upon Mr. Daley's injured wrist. *See id.* at 9–10. Mr. Daley "scream[ed] in pain" and defendant Gisler "encourage[d] the [other] officers to continue." *Id.* at 10. This "continued for an extended period." *Id.*

Mr. Daley requested medical assistance. *See id.* "The defendants instruct[ed] medical staff to not pay [Mr. Daley] any attention." *Id.* Mr. Daley yelled through his cell door that he felt suicidal, and medical staff finally responded. *See id.* at 11. Responding medical staff both put Mr. Daley in contact with the prison psychiatrist, and administered pain medication. *See id.*

**D. Procedural Facts**

The Court dismissed Mr. Daley's initial complaint with leave to amend, and sua sponte

gave Mr. Daley an extension of time in which to amend after Mr. Daley failed to file his amended complaint by the deadline. Dkt. Nos. 7, 8. The Court received Mr. Daley's amended complaint on May 4, 2026. Dkt. No. 10.

The amended complaint includes claims for excessive force, deliberate indifference to serious medical needs, retaliation, and supervisory liability. *See generally id*. It names as defendants Warden Betsinger; Sergeants Curry and Gisler; and Correctional Officers Clifton, Gamez, Goodwin, Hamilton, and Rodriquez. *See id*. at 2. Any other unnamed parties or claims are no longer defendants to this action. *See London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981) ("[A] plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint."); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262–63 (9th Cir. 1992) (where an amended complaint did not name all the defendants to an action, they were no longer defendants).

The amended complaint states that at least two of Mr. Daley's administrative appeals were "rejected due to timeframe." Am. Compl. at 2. It also states that "Plaintiff [was] not at fault" for this rejection, because "PBSP/CDCR sabotage[d] Plaintiff['s] appeal process. *Id*. For screening purposes only the Court construes this statement as an argument that any failure to exhaust should be excused.

## II. Legal Standard

Federal courts must screen any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III. Analysis

Mr. Daley attempts to bring claims for excessive force, retaliation, deliberate indifference to his serious medical needs, and "supervisory liability." Am. Compl. at 2. Each will be addressed in turn.

United States District Court
Northern District of California

**A. Excessive Force**

Mr. Daley identifies excessive force incidents on June 13 and June 26, 2024, and names "all defendant officers." The Court construes this allegation to include Warden Betsinger and Sergeants Curry and Gisler.

For an excessive force claim, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *Jeffers v. Gomez*, 267 F.3d 895, 912–13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot but applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent the riot). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *see, e.g., Simmons v. Arnett*, 47 F.4th 927, 933 (9th Cir. 2022) (concluding that guard's decision to shoot the closer of two inmates who were fighting with sponge rounds, which was the lowest level of force available to him, to stop the fight and keep staff and prisoners safe was not an excessive use of force); *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (holding that pepper-spraying fighting inmates a second time after hearing coughing and gagging from prior spray was not malicious and sadistic for purpose of causing harm, where initial shot of spray had been blocked by inmates' bodies).

As to the June 13, 2024 incident, Mr. Daley alleges that defendants Hamilton, Clifton, and Curry knew of Mr. Daley's wrist injury and waist-chains chrono and applied handcuffs to his injured wrists despite this knowledge. Mr. Daley also alleges that defendants Hamilton and Clifton intentionally applied pressure to the injured wrist while escorting Mr. Daley across the yard, despite having been just reminded of the waist-chain chrono by non-defendant Grogran. At screening, these allegations are sufficient to raise a claim for intentional infliction of excessive

United States District Court
Northern District of California

force.

As to the June 26, 2024 incident, Mr. Daley alleges that defendants Gisler, Goodwin, Gamez, and Rodriquez used a "triangle" to apply pressure to Mr. Daley's injured wrist after Mr. Daley already was confined in a cell. At screening, this is sufficient to raise a claim for intentional infliction of excessive force.

The amended complaint does not allege that Warden Betsinger applied force to Mr. Daley's person, nor does Warden Betsinger appear to have been present when others applied force. *See generally* Am. Compl. Ordinarily, liability in a § 1983 action requires the direct participation of the defendant in the alleged wrongful conduct. There is a limited exception, however, under the "integral participation" theory of § 1983 liability. This theory holds that "[a]n officer's § 1983 liability is predicated on his integral participation in the alleged violation" and allows an officer to be held liable where he is just one participant in a sequence of events that gives rise to a constitutional violation. *See Nicholson v. City of Los Angeles*, 935 F.3d 685, 691–92 (9th Cir. 2019) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007)) (holding that police officer was liable for false arrest and use of excessive force where he set into motion the alleged constitutional violations and either directed the other officers to commit the false arrest or consulted with them in that decision). Pursuant to this theory, a police officer need not have been the sole party responsible for a constitutional liability for liability to attach, and it is not required that each officer's actions themselves rise to the level of a constitutional violation. A defendant officer may be liable even if "an intervening decision of an informed, neutral decision-maker breaks the chain of causation ... where the intervening decision was foreseeably influenced by the defendant." *Nicholson*, 935 F.3d at 692 (internal quotation marks and citation omitted).

Here, Mr. Daley alleges that the June 24, 2026 application of excessive force occurred immediately after Warden Betsinger instructed officers Gisler and Goodwin to "get [Mr. Daley] out of here and teach[] [Mr. Daley] a lesson about Pelican Bay." *Id.* at 8. It is thus at least arguable that defendants Gisler and Goodwin applied excessive force at Warden Betsinger's direction, and that the use of excessive force was foreseeable by Warden Betsinger when he issued that direction. At screening, this is sufficient to suggest that Warden Betsinger is an appropriate defendant to Mr.

Daley's claim for intentional infliction of excessive force.

**B. Retaliation**

Mr. Daley alleges that the June 26, 2024 application of excessive force was in retaliation for Mr. Daley's assertion of his constitutional rights to be protected from assault by other inmates and to adequate medical care. *See* Am. Compl. at 13.

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84 (1977). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted). *Accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline). The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *See Hines v. Gomez*, 108 F.3d 265, 267–68 (9th Cir. 1997).

Mr. Daley alleges that Warden Betsinger ordered defendants Gisler and Goodwin to "teach[] [Mr. Daley] a lesson" because Mr. Daley was "trying to hide in EOP." Am. Compl. at 8. EOP appears to refer to the "enhance[d] outpatient program," *id.* at 3, which in turn suggests that Warden Betsinger intended to retaliate for Mr. Daley's assertion of his right to medical care.[1] At

[1] To the extent Mr. Daley would argue that the retaliation was intended to punish him for refusing to be housed in general population, the Court is not aware of any authority that holds that prisoners have a constitutional right to refuse a housing assignment. Rather, most authority holds that prisoners have no constitutional right to decide where they are housed. *See Olim v. Wakinekona*, 461 U.S. 238, 244–48 (1983) (holding that prisoners have no constitutional right to incarceration in a particular institution); *Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993) (holding that there is no constitutionally protected liberty interest in a transfer request).

screening, this is sufficient to state a retaliation claim.

Although Mr. Daley does not name the defendants to his retaliation claim, from context the Court infers that he intends to raise this claim against defendants Betsinger, Gisler, and Goodwin. *See generally* Am. Compl. The amended complaint does not suggest that any other defendant knew of Warden Betsinger's allegedly retaliatory instruction. *See generally id.*

**C. Deliberate Indifference**

Mr. Daley also states a claim for deliberate indifference to his serious medical needs. *See* Am. Compl. at 10–11.

The "'treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care," and to "'take reasonable measures to guarantee the safety of the inmates.'" *Id.* A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton, *id*. (citing *Wilson*, 501 U.S. at 297). A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837.

The amended complaint reveals that defendants Gisler, Goodwin, Gamez, and Rodriquez did not seek medical care after inflicting an injury upon Mr. Daley and instructed non-defendant personnel to ignore Mr. Daley's requests for medical assistance. *See* Am. Compl. at 10–11. This delay and intentional interference with the provision of medical care is sufficient to state a deliberate indifference claim at screening. *See, e.g., McGuckin v. Smith*, 974 F.2d 1050, 1062 (9th Cir. 1992) (concluding that a delay of medical care gave rise to a colorable § 1983 claim where the delay caused the plaintiff to suffer "unnecessary pain"), *overruled in part on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). The Court notes for Mr. Daley's benefit, however, that with more facts defendants may be able to show that they

were not deliberately indifferent if, for example, the delay was minimal or did not cause Mr. Daley additional pain. *Compare McGuckin*, 974 F.2d at 1062 (noting that the delay was seven months) *with* Am. Compl. at 10–11 (not specifying the length of the delay, but suggesting Mr. Daley received medical treatment the same day as his injury).

**D. Supervisory Liability**

Mr. Daley attempts to bring a claim for supervisory liability against unspecified "supervisory defendants." *See* Am. Compl. at 13–14. Such a claim is impermissible.

"In a § 1983 … action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (finding under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and Rule 8 of the Federal Rules of Civil Procedure, that complainant-detainee in a *Bivens* action failed to plead sufficient facts "plausibly showing" that top federal officials "purposely adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin" over more likely and non-discriminatory explanations). *Compare Seagraves v. Wash. State Dep't of Children Youth and Families*, 182 F.4th 1083, 1088 (9th Cir. 2026 ("Vicarious liability may not be imposed on a supervisor for the acts of their subordinates in a Section 1983 action.") *with Bell v. Williams*, 108 F.4th 809, 819 (9th Cir. 2024) (jail sergeant was liable for directing the use of excessive force by ordering Special Operations Response Team to forcibly extract plaintiff from his cell without using a wheelchair or mobility device, causing the deputies to carry plaintiff by his limbs).

Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, however, "[a] supervisor can be liable in this individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (citation omitted). Here, as explained above, the facts suggest that defendant Betsinger directed officers to retaliate against Mr. Daley and that some defendants employed excessive force in their efforts to carry out

defendant Betsinger's orders. For this reason, the Court concludes that defendant Betsinger could have foreseen excessive force would be employed in carrying out his orders, and allows Mr. Daley to bring excessive force and retaliation claims against defendant Betsinger. *See supra* III.A–B.

Mr. Daley's claim for supervisory liability is dismissed. Although defendant Betsinger cannot be held liable merely because he is a supervisor, he remains a defendant in this lawsuit because of his direct actions.

**E. Exhaustion**

When asked whether his claims were exhausted, Mr. Daley alternately states that they were and states that his "appeal process" was "sabotage[d]" by defendants as to at least one of his grievances. Am. Compl. at 1–2. He asserts that another grievance was denied at the highest level of administrative appeal. *See id*. at 2.

Federal law provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Ross v. Blake*, 578 U.S. 632, 638–39 (2016) (mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions). All available remedies must be exhausted, and exhaustion is a prerequisite to suit. *See Porter,* 534 U.S. at 524; *see also Booth v. Churner*, 532 U.S. 731, 741 (2001). District courts lack discretion to ignore a failure to exhaust. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

Because Mr. Daley states in his amended complaint that he exhausted his remedies and that at least one grievance was denied at the highest level of administrative appeal, the Court assumes for screening purposes that Mr. Daley fulfilled the exhaustion requirement. The Court construes Mr. Daley's argument that defendants "sabotage[d] [his] appeal process" as an argument that any defects in the exhaustion of his other grievance should be excused. The Court notes for Mr. Daley's benefit, however, that this is not a finding that all claims were properly exhausted. Defendants still may be able to show that a claim was not properly raised or was not pursued throughout the appeal process, and that this was not the fault of defendants.

## IV. Conclusion

1. The amended complaint states cognizable claims against defendants for excessive force, retaliation, and deliberate indifference to serious medical needs. The Court orders defendants to respond to these claims.

2. The Court orders service of the amended complaint on defendants and orders them to respond to the claims identified above. Service on defendants shall proceed under the California Department of Corrections and Rehabilitation's ("CDCR") E-Service Program for civil rights cases from prisoners in CDCR custody. In accordance with the program, the Clerk is directed to serve on CDCR via email the following documents: The amended complaint and exhibits thereto (Dkt. No. 10), this order of service, a CDCR Report of E-Service Waiver form, and a summons. The Clerk also shall serve a copy of this order on Mr. Daley.

3. No later than **forty (40) days** after service of this order via email on CDCR, CDCR shall provide the Court a Completed CDCR Report of E-Service Waiver advising the Court whether defendants will be waiving service of process without the need for service by the United States Marshal Service ("USMS"), or whether any defendant declined to waive service or could not be reached.

4. CDCR shall provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office which, within **twenty-one (21) days**, shall file with the Court a waiver of service of process for each defendant who is waiving service.

5. If any defendant does not waive service, then upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare a USM-285 Form. The Clerk shall provide to the USMS the completed USM-285 forms and copies of this order, the summons, and the operative complaint for service upon the non-waiving defendant. The Clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

6. No later than **ninety (90) days** from the filing date of this order, defendants shall file **one comprehensive motion for summary judgment or other dispositive motion** with respect to the Amended Complaint. Any motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Rule 56 of the Federal Rules

of Civil Procedure. A motion for summary judgment also must be accompanied by a separate *Rand* notice so that Mr. Daley will have fair, timely and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment). Defendants are advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute.

7. If defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. Information regarding the Court's Alternative Dispute Resolution Program is available on the website for the United States District Court for the Northern District of California.

1. Mr. Daley's opposition to the dispositive motion shall be filed with the Court and served on defendants no later than **twenty-eight (28) days** from the date defendants' motion is filed. Mr. Daley is advised to read Rule 56 of the Federal Rules of Civil Procedure and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim).

2. Defendants **shall** file a reply brief no later than **fourteen (14) days** after Mr. Daley's opposition is filed.

3. All communications by Mr. Daley with the Court must be served on defendants or defendants' counsel once counsel has been designated, by mailing a true copy of the document to defendant or defendants' counsel.

4. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. **No further court order under Federal Rule of Civil Procedure 30(a)(2) is required before the parties may conduct discovery.** Mr. Daley is advised to read Federal Rule of Civil Procedure 37, which requires each party to "in good faith confer[] or attempt[] to confer with" the opposing party regarding a discovery dispute, before seeking court action to resolve such a dispute.

5. It is Mr. Daley's responsibility to prosecute this case. Mr. Daley must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address." He also must comply with the Court's orders in a timely fashion. Failure

to do so will result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

The Clerk shall update the docket to reflect that defendants Juneau and Parry are no longer named in this action.

**IT IS SO ORDERED.**

Dated: November 9, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California